1  ROBBINS GELLER RUDMAN
    & DOWD LLP
2  DAVID C. WALTON (167268)
  TRIG R. SMITH (237399)
3  655 West Broadway, Suite 1900
  San Diego, CA  92101-8498
4  Telephone:  619/231-1058
  619/231-7423 (fax)
5  davew@rgrdlaw.com
  trigs@rgrdlaw.com
6
  JOHNSON & WEAVER, LLP
7  FRANK J. JOHNSON (174882)
  BRETT M. WEAVER (204715)
8  600 West Broadway, Suite 1540
  San Diego, CA  92101
9  Telephone:  619/230-0063
  619/255-1856 (fax)
10 frankj@johnsonandweaver.com
  brettw@johnsonandweaver.com
11
  Attorneys for Plaintiff
12

13                UNITED STATES DISTRICT COURT

14            SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15 JEFF RIHN, Individually and on Behalf of All Others Similarly Situated, | Case No. **'15CV0575 BTM DHB** |
| 16               Plaintiff, | CLASS ACTION |
| 17   vs. | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| 18 ACADIA PHARMACEUTICALS INC., ULI HACKSELL and STEPHEN | |
| 19 R. DAVIS, | |
| 20              Defendants. | |
| 21 | DEMAND FOR JURY TRIAL |

22

23

24

25

26

27

28

1    Plaintiff, individually and on behalf of all others similarly situated, by
2  plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges
3  the following based upon personal knowledge as to plaintiff and plaintiff's own acts,
4  and upon information and belief as to all other matters based on the investigation
5  conducted by and through plaintiff's attorneys, which included, among other things, a
6  review of Securities and Exchange Commission ("SEC") filings by ACADIA
7  Pharmaceuticals Inc. ("ACADIA" or the "Company"), as well as media reports about
8  the Company.  Plaintiff believes that substantial additional evidentiary support will
9  exist for the allegations set forth herein after a reasonable opportunity for discovery.

10                          **INTRODUCTION AND OVERVIEW**

11    1.    This is a class action for violations of the anti-fraud provisions of the
12  federal securities laws on behalf of all persons who purchased ACADIA publicly
13  traded securities between February 26, 2015 and March 11, 2015, inclusive (the
14  "Class Period"), and who were damaged thereby.

15    2.    ACADIA is a biopharmaceutical company focused on the development
16  and commercialization of medicines to address unmet medical needs in neurological
17  and related central nervous system disorders.  ACADIA has a pipeline of product
18  candidates led by NUPLAZID™ (pimavanserin), which is in Phase III development as
19  a treatment for Parkinson's disease psychosis ("PDP").

20    3.    On March 11, 2015, ACADIA issued a press release announcing a
21  change in the timing of its planned New Drug Application ("NDA") submission to the
22  U.S. Food and Drug Administration ("FDA") for NUPLAZID.  The Company had
23  previously planned to submit the NDA for NUPLAZID in the first quarter of 2015,
24  now, however, it planned to submit its NUPLAZID NDA for the treatment of PDP in
25  the second half of 2015.

26    4.    In a separate press release the same day, ACADIA announced the abrupt
27  retirement of the Company's Chief Executive Officer ("CEO") and director, Uli
28  Hacksell ("Hacksell").

- 1 -

5.   As a result of this news, ACADIA common stock dropped $9.94 per share to close at $34.82 per share on March 12, 2015, a one-day decline of 22% on volume of 15 million shares.

## JURISDICTION AND VENUE

6.   The claims herein are asserted under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5. Jurisdiction is conferred by §27 of the 1934 Act.

7.   Venue is proper pursuant to §27 of the 1934 Act. ACADIA's principal place of business is in San Diego, California, and the false and misleading statements were issued in large part from this District.

## THE PARTIES

8.   Plaintiff Jeff Rihn purchased ACADIA publicly traded securities during the Class Period as set forth in the attached certification and was damaged thereby.

9.   Defendant ACADIA is headquartered in San Diego, California. ACADIA's common stock is traded under the ticker "ACAD" on the NASDAQ, an efficient market.

10.   Defendant Hacksell was, at all relevant times, CEO and a director of ACADIA.   On March 11, 2015, defendant Hacksell abruptly retired from the Company.

11.   Defendant Stephen R. Davis ("Davis") is, and at all relevant times was, Chief Financial Officer ("CFO"), Executive Vice President and Chief Business Officer of ACADIA.   On March 11, 2015, defendant Davis was appointed Interim CEO.

12.   The defendants referenced above in ¶¶10-11 are collectively referred to herein as the "Individual Defendants." The Individual Defendants made, or caused to be made, false statements that caused the prices of ACADIA securities to be artificially inflated during the Class Period.

- 2 -

13.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of ACADIA's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

14.    Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about ACADIA. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of ACADIA publicly traded securities was a success, as it: (i) deceived the investing public regarding ACADIA's prospects and business; (ii) artificially inflated the prices of ACADIA securities; and (iii) caused plaintiff and other members of the Class to purchase ACADIA publicly traded securities at artificially inflated prices.

## SCIENTER ALLEGATIONS

15.    During the Class Period, the defendants had the motive and opportunity to commit the alleged fraud. Defendants also had actual knowledge of the misleading statements they made and/or acted in reckless disregard of the true information known to them at the time. In doing so, the defendants participated in a scheme to defraud and committed acts, practices and participated in a course of business that operated as a fraud or deceit on purchasers of ACADIA publicly traded securities during the Class Period.

# BACKGROUND

16.    ACADIA is a biopharmaceutical company focused on the development and commercialization of innovative medicines to address unmet medical needs in neurological and related central nervous system disorders. ACADIA has a pipeline of product candidates led by NUPLAZID (pimavanserin), for which the Company reported positive Phase III trial results as a treatment for PDP and which has the potential to be the first drug approved in the United States for this disorder.

17.    The Company had previously told investors that the NUPLAZID NDA would be filed with the FDA by the end of 2014. The deadline slipped to the first quarter of 2015. Investors were keenly focused on the progress of the NDA submission.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS DURING THE CLASS PERIOD

18.    On February 26, 2015, ACADIA issued a press release announcing its 2014 fourth quarter and year-end financial results (for the year ended December 31, 2014). The Company reported a net loss of $28.4 million, or ($0.28) diluted earnings per share ("EPS") and collaborative revenue of $47,000 for the fourth quarter of 2014. Additionally, the Company reported a net loss of $92.5 million, or ($0.95) diluted EPS, and collaborative revenue of $120,000 for the year ended December 31, 2014. The release stated in pertinent part as follows:

> "Our accomplishments in 2014, highlighted by NUPLAZID™ receiving Breakthrough Therapy designation from the FDA, our strengthened balance sheet, and our commercial preparations, set the stage for a promising 2015," said Uli Hacksell, Ph.D., Chief Executive Officer of ACADIA. "Importantly, we continue to advance our Parkinson's disease psychosis program towards registration and *remain on track to submit our New Drug Application to the FDA in the first quarter of 2015.*"

> "We have an important year ahead of us as we continue to add to our commercial capabilities and prepare for the planned launch of NUPLAZID in the United States. We also plan to initiate studies with pimavanserin where new therapies are greatly needed, including schizophrenia and sleep disturbances in Parkinson's patients, as well as continuing our ongoing Phase II study with pimavanserin in Alzheimer's disease psychosis.    Additionally, we will prepare a Marketing

-4-

Authorization Application for NUPLAZID for submission in Europe. In all, 2015 will be a pivotal year for ACADIA as we advance NUPLAZID towards commercialization in the United States and broaden the program into additional neurological and psychiatric indications for which there are large unmet medical needs."

\* \* \*

*2014 Highlights*

*NUPLAZID (pimavanserin)*

- FDA granted Breakthrough Therapy designation to NUPLAZID for the treatment of Parkinson's disease psychosis (PDP).

- Conducted successful pre-NDA meetings with the FDA for NUPLAZID.

- FDA provisionally accepted the trade name "NUPLAZID"™ for pimavanserin.

- Presented caregiver burden data from Phase III PDP program at the 10th Annual International Congress of Non-Motor Dysfunctions in Parkinson's Disease and Related Disorders.

- Continued to enroll patients in the ongoing Phase II study with pimavanserin in Alzheimer's disease psychosis.

- Advanced commercial preparations for the planned launch of NUPLAZID, comprising extensive market research, foundational access and reimbursement research, national and regional scientific advisory boards, pricing analysis, sales force sizing, and adding to the leadership of the commercial team.

19.   After releasing its financial results for its 2014 fourth quarter and year end, ACADIA hosted a conference call for analysts, media representatives and investors during which defendant Hacksell represented the following:

Thank you Terry. The stage is set for what I believe will be a very exciting year at ACADIA and we're off to a strong start in 2015. Our priorities are clear. *We plan to submit our NDA for NUPLAZID during the first quarter of 2015, continue to build out our commercial capabilities to prepare for the planned launch of NUPLAZID*, and we will pursue the development of pimavanserin for other neurological and psychiatric disorders that are underserved by currently available antipsychotic drugs. We also will prepare a submission for NUPLAZID in Europe.

As far as our organization, *we are expanding our existing infrastructure to support the planned launch* and commercialization of NUPLAZID, including adding to our commercial structure, *commercial level manufacturing,* medical affairs, quality control and compliance. We have brought in highly qualified individuals with extensive

experience in their functional domain and in CNS products. I am thrilled to see the high level of collaboration across functions.

20.     On March 10, 2015, ACADIA's stock price surged 18% to $45.88 per share on speculation that the Company would be acquired. The Company cancelled two healthcare investor conferences without explanation. This signaled to the market that a deal to buy ACADIA was about to be announced. The Company did not inform the market of its problems with the NDA.

21.     Then, on March 11, 2015, ACADIA issued a press release announcing a change in the timing of its planned NDA submission to the FDA for NUPLAZID. The Company had previously planned to submit the NDA for NUPLAZID in the first quarter of 2015, now, however, it planned to submit its NUPLAZID NDA for the treatment of PDP in the *second half of 2015*. The release stated in part:

> "We have concluded that additional time is needed to complete the readiness of our commercial manufacturing systems," said Steve Davis, Interim Chief Executive Officer of ACADIA. "While we are very disappointed with the change in timing, we believe that this is the prudent course of action to take. We are working expeditiously to ensure that our systems are robust and ready for FDA review and commercial launch. Importantly, we remain confident in the safety and efficacy package supporting the NDA of NUPLAZID, which received Breakthrough Therapy designation from the FDA last year."

22.     In a separate press release the same day, ACADIA announced the abrupt retirement of defendant Hacksell.

23.     In fact, contrary to the Company's assurances in February 2015, ACADIA was not on track to submit the NUPLAZID NDA during the first quarter of 2015.

24.     As a result of this news, ACADIA common stock dropped $9.94 per share to close at $34.82 per share on March 12, 2015, a one-day decline of 22% on volume of 15 million shares.

## LOSS CAUSATION/ECONOMIC LOSS

25.     During the Class Period, defendants made false and misleading statements regarding the timing of the NDA submission for NUPLAZID and engaged

in a scheme to deceive the market. Defendants' conduct artificially inflated the prices of ACADIA securities and operated as a fraud or deceit on the Class (as defined below). Later, when defendants' prior misrepresentations were disclosed to market participants, the price of ACADIA stock plummeted as the prior artificial inflation came out of the stock price. As a result of their purchases of ACADIA publicly traded securities during the Class Period, plaintiff and members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

26.   Plaintiff and the Class are entitled to a presumption of reliance. During the Class Period, defendants made material misstatements and omissions that artificially inflated the prices of ACADIA securities. Plaintiff and other members of the Class purchased ACADIA publicly traded securities between the time defendants issued their initial misstatements on February 26, 2015 and the time the true facts were disclosed on March 11, 2015, without knowledge of the misrepresented and omitted facts. At all relevant times, the market for ACADIA securities was efficient and the prices of ACADIA securities were impacted by defendants' misstatements and omissions.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

27.   Plaintiff incorporates ¶¶1-26 by reference.

28.   During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

29.   Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)   Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of ACADIA publicly traded securities during the Class Period.

30.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for ACADIA securities. Plaintiff and the Class would not have purchased ACADIA securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

31.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of ACADIA publicly traded securities during the Class Period.

**COUNT II**

**For Violation of §20(a) of the 1934
Act Against All Defendants**

32.     Plaintiff incorporates ¶¶1-31 by reference.

33.     During the Class Period, defendants acted as controlling persons of ACADIA within the meaning of §20(a) of the 1934 Act. By virtue of their positions and their power to control public statements about ACADIA, the Individual Defendants had the power and ability to control the actions of ACADIA and its employees. ACADIA controlled the Individual Defendants and its other officers and employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

**CLASS ACTION ALLEGATIONS**

34.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased ACADIA

- 8 -

publicly traded securities during the Class Period (the "Class").  Excluded from the Class are defendants and their immediate families, directors and officers of ACADIA and their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

35.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  During the Class Period, ACADIA had more than 100 million shares of stock outstanding, owned by hundreds or thousands of persons.

36.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    (a)    Whether the 1934 Act was violated by defendants;

    (b)    Whether defendants omitted and/or misrepresented material facts;

    (c)    Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    (d)    Whether defendants knew or recklessly disregarded that their statements were false and misleading;

    (e)    Whether the prices of ACADIA publicly traded securities were artificially inflated; and

    (f)    The extent of damage sustained by Class members and the appropriate measure of damages.

37.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

1    38.    Plaintiff will adequately protect the interests of the Class and has retained

2  counsel who are experienced in class action securities litigation.  Plaintiff has no

3  interests which conflict with those of the Class.

4    39.    A class action is superior to other available methods for the fair and

5  efficient adjudication of this controversy.

**PRAYER FOR RELIEF**

6  

7    WHEREFORE, plaintiff prays for judgment as follows:

8    A.    Determining that this action is a proper class action, designating plaintiff

9  as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the

10  Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

11    B.    Awarding plaintiff and the members of the Class damages and interest;

12    C.    Awarding plaintiff's reasonable costs, including attorneys' fees; and

13    D.    Awarding such equitable/injunctive or other relief as the Court may deem

14  just and proper.

**JURY DEMAND**

15  

16    Plaintiff demands a trial by jury.

17  DATED:  March 13, 2015                    ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
18                                              DAVID C. WALTON
                                                  TRIG R. SMITH
19

20                                                      *s/ David C. Walton*
21                                                  DAVID C. WALTON

22                                              655 West Broadway, Suite 1900
                                                  San Diego, CA  92101-8498
23                                              Telephone:  619/231-1058
                                                  619/231-7423 (fax)
24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
BRETT M. WEAVER
600 West Broadway, Suite 1540
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Securities\Cpt ACADIA Pharmaceuticals.docx

DocuSign Envelope ID: B7379A1F-5F6C-4610-90AA-2FA42211D395

## CERTIFICATION OF PLAINTIFF PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Jeff Rihn, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I have reviewed the complaint and authorize its filing.

2. I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4. I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 02/26/15 | 550 | $37.82 |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |

5. I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

DocuSign Envelope ID: B7379A1F-8F6C-4610-90AA-2FA42211D395

6.     I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of March 2015.

DocuSigned by:

*Jeff Ribn*

Jeff Rinn