# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF RIHN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACADIA PHARMACEUTICALS INC., ULI HACKSELL AND STEPHEN R. DAVIS,<br><br>Defendants. | Case No.: 15-cv-00575 BTM-DHB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>**ECF NOS. 75, 76** |

Plaintiffs have filed a Motion for Final Approval of the Class Action Settlement (ECF No. 75) and a Motion for Attorneys' Fees and Expenses (ECF No. 76). On January 8, 2018, the Court held a hearing on the motions. For the reasons discussed below, Plaintiffs' motions are **GRANTED**.

## I. PROCEDURAL BACKGROUND

On November 16, 2015, Lead Plaintiffs, Paul and Sharyn Levine, filed a Consolidated Class Action Complaint ("CCAC") against Defendants Acadia Pharmaceuticals Inc. ("Acadia"), Uli Hacksell, and Stephen R. Davis. (ECF No.

43). The CCAC asserted claims for violations of **(1)** section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 and **(2)** section 20(a) of the Securities Exchange Act. *Id.* The claims were premised on allegations that Defendants knowingly and recklessly made materially false and misleading statements regarding the timing and status of Acadia's New Drug Application ("NDA") for its lead product candidate, Nuplazid (pimavanserin). *Id.* These false and misleading statements allegedly artificially inflated stock prices of Acadia between November 10, 2014 and March 11, 2015 (the "Class Period"). *Id.*

On September 19, 2016, the Court denied Defendants' motion to dismiss the CCAC. (ECF No. 56). On November 4, 2016, the Court granted a joint motion to stay the action pending private mediation. (ECF No. 63). The parties filed a joint motion for settlement on March 13, 2017 (ECF No. 67) and the Court issued a preliminary order approving the settlement on June 9, 2017 (ECF No. 71).

## II.  DISCUSSION

### A.  Motion for Final Approval

#### 1.  Class Certification

Plaintiffs seek final certification of the Settlement Class, defined as: lead Plaintiffs as well as all Persons who purchased or otherwise acquired the publicly traded common stock and/or call options of ACADIA in the United States on the NASDAQ Global Select Market during the Class Period and who allege to have been damaged thereby.

Excluded from the Class are Defendants and members of their immediate families; any firm, trust, partnership, corporation, officer, director, or other individual or entity in which a Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors-in-interest or assigns of such excluded Persons; and the Judge and Magistrate Judge to whom the Action is assigned, and any member of those

Judges' staff or immediate families.[1]  Also excluded from the Class is any Person who properly excluded himself, herself, or itself by filing a valid and timely request for exclusion in accordance with the requirements set forth in the Settlement Notice.  The Class Period is defined as the period from November 10, 2014, through and including March 11, 2015, both dates inclusive.

To certify a settlement class, the requirements of Rule 23 must generally be satisfied. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). However, the Court need not inquire whether the case, if tried, would present management problems. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 1, 613 (1997).

Rule 23(a) sets forth four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. The Court finds that all four of these requirements have been satisfied.

The numerosity requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).   The proposed class is numerous, consisting of 27,830 Class Members.

There are common questions of fact and law concerning whether Defendants made materially false and misleading statements regarding the status and timing of Acadia's NDA for Nuplazid (pimavanserin). Plaintiffs' claims are typical because they allege that they purchased publicly traded securities of Acadia during the Class Period and were damaged because Defendants artificially inflated the price of Acadia securities through their dissemination of false and misleading statements about the NDA.

---

[1] Under 28 U.S.C. § 455(b)(5)(iii), any judge of the United States shall disqualify himself if he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.  The Court amends the Settlement Class definition to exclude such individuals as well.

It appears that Plaintiffs and their counsel will fairly and adequately protect the interests of the class. They have vigorously prosecuted the case thus far and it does not appear that there are any conflicts of interest.

In addition to satisfying the requirements of Rule 23(a), a proposed class must qualify for certification under one of the categories in Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3). Certification is proper under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022 (internal quotation marks and citation omitted). "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7AA Wright & Miller, Federal Practice and Procedure § 1778 (3d ed. 2011). When one or more of the central issues in the action are common to the class and can be deemed to predominate, certification may be proper under Rule 23(b)(3) even though other important matters, such as damages or affirmative defenses, will have to be tried separately. *Id.*

Common issues predominate in this litigation. The central inquiry in this case is whether Defendants violated the Securities Exchange Act by disseminating materially false and misleading information regarding the status and timing of Acadia's NDA for Nuplazid (pimavanserin), leading to artificially inflated prices of Acadia's publicly traded securities.

In addition, class treatment is the appropriate vehicle to resolve this

controversy. Pursuant to Rule 23(b)(3), the Court should consider four non-exclusive factors when considering whether class action is a superior method of adjudication, including: (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

Here, the damages for each class member would be small. Therefore, class members would have little motivation to pursue individual cases. Furthermore, due to the common issues in this case, it is desirable to litigate the claims in one forum to ensure consistency of rulings and findings. The parties are unaware of any competing litigation, and the Court need not be concerned regarding any difficulties with management of the class action due to this settlement.

In sum, the Court finds that the requirements of Rule 23(a) have been satisfied and certifies the Settlement Class under Rule 23(b)(3).

### 2. Fairness, Reasonableness, and Adequacy of the Settlement

#### a. Terms of the Settlement

The settlement provides for a gross payment of $2,925,000. The settlement amount will be paid into escrow and, after paying attorneys' fees and expenses approved by the Court, and other costs of settlement, the net settlement amount will be distributed among the class members with recognized losses who timely submit valid Proof of Claim and Release Forms.

#### b. Legal Standard

Before approving a class action settlement, the court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In reaching this determination, courts consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004).

When a settlement agreement is negotiated prior to formal class certification, the court must also scrutinize the settlement for evidence of collusion or other conflicts of interest. *In re Bluetooth Headset Products Liability Lit.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Signs of collusion include: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing" arrangement that provides for the payment of attorney's fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund. *Id.* at 947.

### c. Strength of Plaintiffs' Case and Risk, Complexity, Expense, and Duration of Litigation

Plaintiffs would face substantial risks in continued litigation, which would undoubtedly be time-consuming and costly. Defendants maintain that "they did not make any actionable misstatements or omissions during the Class Period, they did not act with scienter, and Lead Plaintiffs will be unable to prove that their and the Class's losses arise out of Defendants' alleged misconduct." Faruqi Decl. ¶ 43. Specifically, Defendants contend that (i) "all of the statements in the [CCAC] are either protected by the PSLRA safe-harbor or are inactionable corporate optimism," (ii) "the [CCAC] does not include any particularized facts that the NDA was not on track to be submitted in March 2015," (iii) "the scienter allegations in the [CCAC] are nothing more than speculation as Lead Plaintiffs cannot show that Defendants had access to information indicating that the NDA was not on track to be submitted by March 2015," (iv) "Defendants' lack of stock sales and large

personal holdings negate an inference of scienter," and (v) "Lead Plaintiffs cannot establish loss causation because the stock drop on March 12, 2015 was due to the realization that the Company would not be acquired, not due to the Second Delay." *Id.*

Further, "Lead Plaintiffs would have faced a great deal of difficulty in obtaining the necessary documents and depositions" as "the events alleged in the [CCAC] took place as long as four and a half years ago, and the company is under new management." *Id.* ¶ 45. "[T]he relevant documents may have been misplaced, former employees may be difficult to locate, and the memories of the parties involved in the actions alleged in the [CCAC] may have faded." *Id.* "The complexity of the allegations would have required the retention of additional FDA experts, serving third party document subpoenas, and countless depositions." *Id.*

### d. Amount Offered in Settlement

The settlement amount of $2,925,000 "represents approximately 15% of the damages recoverable by Class Members in the Action." Faruqi Decl. ¶ 80. Accordingly, the benefit provided to the class members is substantial. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that recoveries for class action securities litigation typically range from 1.6% to 14% of claimed damages).

When the balance remaining in the net settlement fund is *de minimus*, the remaining balance will be distributed to the Investor Protect Trust. The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to indirectly benefit the entire class. *Six Mexican Workers v. Ariz.Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). When employing the *cy pres* doctrine, unclaimed funds should be put to their next best use, e.g., for "the aggregate, indirect, prospective benefit of the class." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011).

The Ninth Circuit has held that *cy pres* distribution must be "guided by (1)

the objectives of the underlying statute(s); and (2) the interests of the silent class members." *Six Mexican Workers*, 904 F.2d at 1307. A *cy pres* distribution is an abuse of discretion if there is "no reasonable certainty" that any class member would benefit from it. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).

The Investor Protection Trust is a nonprofit organization with the primary mission to provide independent objective information needed by consumers to make informed investment decisions. The Court finds the designated *cy pres* recipient appropriate.

### e. Stage of Proceedings and Experience and Views of Counsel

Lead Counsel, on behalf of Lead Plaintiffs, conducted "an extensive investigation into the facts alleged in the Action, including reviewing FDA documents, press releases, SEC filings, conference call transcripts, and analyst reports." Faruqi Decl. ¶ 38. Prior to settlement, the Court had denied Defendants' motion to dismiss but had not yet ruled on Defendants' motion for reconsideration of the order denying the motion to dismiss.

On December 6, 2016, the parties met with a "highly respected and experienced securities litigation mediator, for an arm's-length mediation session." *Id.* ¶ 40. "In advance of the mediation session, both sides submitted and exchanged lengthy mediation briefs outlining their respective analyses of the claims and defenses, and several exhibits." *Id.* During the session itself, "the parties extensively debated the strengths and weaknesses of Lead Plaintiffs' claims and the defenses available to Defendants." *Id.* The parties are in a position to accurately assess the strengths and weakness of their respective positions. In addition, Lead Counsel, a law firm with substantial experience litigating securities class action lawsuits, is of the opinion that the settlement is fair, reasonable, and adequate. *Id.* ¶ 56.

### f. Reaction of the Class Members

The reaction of Class Members has been positive. No objections have been filed and there has only been one request for exclusion. Cavallo Decl. ¶¶ 11, 12. In addition, no objections were filed after notification to appropriate federal and state officials pursuant to 28 U.S.C. § 1715(b). No objectors appeared at the final approval hearing.

### g. Lack of Collusion

Because this settlement was reached prior to class certification, the Court examines the Settlement for evidence of collusion. *Bluetooth*, 654 F.3d at 946-47. There is no indication of collusion. Lead Counsel seeks a fee award totaling 25% of the Settlement Fund. This percentage of recovery is typical and does not represent a disproportionate distribution of the settlement to counsel. *Six Mexican Workers*, 904 F.2d at 1311.

Additionally, there is no "clear sailing" provision here, as the attorneys' fees are to be paid only out of the Settlement Fund, and at a rate approved by the Court.

Moreover, the parties engaged in extensive settlement negotiations and participated in mediation sessions with Robert Meyer, Esq. The history of the case as well as the substantial benefit provided to the Class by the Settlement indicate there has been no collusion.

### h. Notice to the Class

Rule 23(c)(2)(B) provides that the Court must direct to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." It appears that the best notice practicable has been given.

Here, Kurtzman Carson Consultants LLC ("KCC"), pursuant to the Preliminary Approval Order, mailed the Settlement Notice to 27,830 potential Class Members beginning on June 30, 2017. Faruqi Decl. ¶ 60. The Settlement Notice and the Proof of Claim form were also made available on

www.AcadiaSecuritiesSettlement.com, which has been visited 7,463 times as of August 23, 2017. *Id.* ¶ 62. The Publication Notice was published in *Investor's Business Daily* and posted by *PR Newswire* on July 10, 2017. *Id.* ¶ 60. Additionally, KCC set up a toll-free telephone helpline to accommodate potential Class Members who had questions regarding the Settlement. *Id.* ¶ 61. The help line received 90 calls as of August 23, 2017. *Id.*

The Settlement Notice included: (i) the case caption, (ii) a description of the claims, (iii) a description of the Settlement Class, (iv) the names of Lead Counsel, (v) the amount of attorneys' fees and expenses that will be requested, (vi) the Final Fairness Hearing date, (vii) the Class Members' opportunity to appear at the Final Fairness Hearing, (viii) the deadline for filing objections to and exclusions from the Settlement, (ix) the consequences of exclusion, (x) the consequences of remaining a Class Member, (xi) the manner in which to obtain more information, and (xii) directions on how to access the case docket. *See* Cavallo Decl. Ex. A.

### i. Final Approval

For the reasons discussed above, the Court finds that the Settlement is fair, reasonable, and adequate. Therefore, the Court grants final approval of the Settlement.

## B. Motion for Attorneys' Fees and Expenses

### 1. Attorneys' Fees

Plaintiffs seek attorneys' fees in the amount of $731,250 – 25% of the anticipated $2,925,000 Settlement Fund.

The Ninth Circuit has established 25% of a common fund as a benchmark award for attorney's fees. *Six Mexican Workers*, 904 F.2d at 1311. The court may depart from this benchmark percentage if special circumstances indicate that the percentage recovery would be either too small or too large. *Id.* The court's selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Such factors include, but are not limited to: (1) the results achieved; (2) the risk involved in the litigation; (3) incidental or nonmonetary benefits conferred by the litigation; and (4) financial burden of the case on counsel. *Id.* at 1049-50.

The Court finds that 25% of the Settlement Fund is an appropriate award in this case. This conclusion is based on the quality of representation by counsel, the excellent results achieved for the class, and the real risks of continued litigation. There does not appear to be a basis for departing from the benchmark percentage.

Application of the "lodestar method" may provide a useful "cross-check" as to the reasonableness of a given percentage award. *Vizcaino*, 290 F.3d at 1050. Courts commonly use a rough calculation of the lodestar as a cross-check. *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6 2013).

Here, a rough calculation of the lodestar comes to $709,630. Mem. of P. & A. in Support of Attorneys' Fees Mot. at 13. Based on the lodestar, the multiplier is 1.03. Courts have "routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1305 (W.D. Wash. 2001). "To restrict Class Counsel to the hourly rates they

customarily charge for non-contingent work – where payment is assured – would deprive them of any financial incentive to accept contingent-fee cases which may produce nothing. Courts have therefore held that counsel are entitled to a multiplier for risk." *Id.*

Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases. *Vizcaino*, 290 F.3d at 1051 n. 6. Accordingly, the 1.03 multiplier is within the range or reasonableness. Therefore, the lodestar cross-check supports the reasonableness of the requested fees of $731,250.

### 2. Expenses

Lead Counsel seeks $75,534.64 in costs. These costs were for expert and investigator fees, mediation fees, filing fees, electronic research, photocopying, postage, meals, travel, and lodging. *See* Supp. Decl. Faruqi in Support of Attorneys' Fee Mot. These are the types of expenses routinely charged to paying clients. *See In re Omnivision Tech.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (explaining that class counsel "may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters").

However, the Court does not consider the $988.63 in Lexis Nexis research fees to be a qualified expense. Fees for the subscription service would have been incurred regardless of whether research was done for this case and therefore should be properly considered as part of the firm's overhead.

Therefore, the Court grants Lead Counsel's request for reimbursement of expenses in the amount of $74,546.01.

### 3. Incentive Fee Award

Plaintiffs seek an incentive award of $2,500.00 for Lead Plaintiff, Sharyn Levine.

The Court may, in its discretion, award incentive or service awards to named plaintiffs to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action,

and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). District courts must carefully scrutinize incentive awards to ensure that they do not undermine the adequacy of the class representatives. *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013).

Lead Counsel states that over the past two and a half years, Plaintiff has (i) engaged in numerous communications with Lead Counsel, (ii) participated in the litigation and provided input into the prosecution of the case, (iii) reviewed documents filed in this Action, including the CCAC and motion to dismiss briefing, (iv) stayed fully informed of the status of the case, and (v) consulted with counsel and provided input on the mediation and settlement negotiations. Faruqi Decl. ¶ 97. In light of the work Plaintiff has done on behalf of the class, the requested incentive award is reasonable and is approved.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Final Approval of the Class Action Settlement is **GRANTED**. Plaintiffs' Motion for Attorneys' Fees and Expenses is also **GRANTED**. The Court grants attorney's fees in the amount of $731,250, expenses in the amount of $74,546.01, and an incentive award of $2,500.

**IT IS SO ORDERED.**

Dated: January 22, 2018

_____
Barry Ted Moskowitz, Chief Judge
United States District Court